## People's Loan and Savings Association *v.* Carey et al.

[No. 19,255. Filed October 11, 1900.]

Mortgages.—*Liens.*—*Contracts.*—The holder of a lien upon real estate surrendered the same in order that the owner might make a larger loan thereon with a building and loan association. The association entered into a written agreement that after the payment of "all mechanics' and other liens, which have been or may be hereafter filed against the property described in the mortgage, * * * and when said buildings are fully completed, and all material and labor fully paid," any sum remaining should be paid to the holder of the

original lien. After the payment of the liens, there remained the sum of $800.39, which the association paid to the mortgagor. *Held,* in an action by the association to foreclose its mortgage, that the original lien holder was entitled to recover on a cross-complaint the amount paid by the association to the mortgagor.

From the LaPorte Circuit Court. *Affirmed.*

*W. D. Frazer* and *O. Oldfather,* for appellant.
*F. E. Osborn* and *H. W. Sallwasser,* for appellees.

HADLEY, J.—This action was commenced by appellant to foreclose a mortgage. Appellee Carey filed a cross-complaint. The issue was formed and trial had upon the cross-complaint. We are not informed by the record as to what became of the complaint. Appellant's separate demurrer to each the second (*a*) and third (*a*) paragraphs of the cross-complaint was overruled, as was likewise its motion for a new trial, for judgment upon the special finding, and its exceptions to the conclusion of law. Error is severally assigned upon each of these rulings.

The special finding discloses the following facts: Prior to January 20, 1896, one Krotz purchased of one Wells the real estate described in the complaint, and the appellee Shadrach H. Carey furnished the purchase money therefor, and, as a security for that and other sums to be advanced for improvements, took a conveyance in his name from Wells by a deed absolute upon its face. Krotz afterwards subdivided the land into lots, and commenced the erection thereon of buildings and other improvements, the said Carey furnishing from time to time the money that was used in such improvements. On January 20, 1896, Krotz was indebted to Carey, on account of purchase money and sums advanced for said improvements, the total amount of $3,800, and there were on said lots fourteen storerooms in course of construction but incomplete; and on said day Krotz negotiated on the whole of said lots a loan for $4,500 of the appellant. The title to the property being in Carey, he and Krotz met at the office of the appellant, and it was

there mutually agreed that Carey should convey the property to Krotz to enable him to mortgage it to the appellant to secure said loan of $4,500, and from the proceeds of the loan Krotz was to pay to Carey $2,000, and after the payment of certain debts and all mechanic and other liens against the property what remained of said loan was to be paid to Carey; and at the same time, and as a part of the agreement and transaction, the appellant executed to Carey its written contract as follows: "Whereas, Charles W. Krotz has executed his note to this association for $4,500, together with mortgage securing the same; and whereas, we have paid to Krotz the sum of $2,000; now, therefore, this instrument witnesseth that we agree to pay to James W. Arthur $211.80, and to pay all mechanic and other liens which have been or may be hereafter filed against the property described in said mortgage, not, however, to exceed the sum of $2,288.20; and when said buildings are fully completed, and all material and labor fully paid, then any part of said sum of $2,288.20 which we have not paid upon said liens filed upon said property, and the expenses incurred by reason of said loan, we agree to pay to Shadrach H. Carey. People's Loan & Savings Association, by C. W. Burket, President. Expenses paid $62.60."

Appellant, pursuant to said contract, paid James W. Arthur $211.80, deducted the expenses of the loan $62.60, paid all the mechanic and other liens filed against the mortgaged premises, amounting in all to $1,425.21, and making a total disbursement under said contract of $1,699.61, and leaving a balance of the loan undisbursed under the contract of $800.39, after the completion of the buildings, and full payment for all liens, labor, and materials therefor, which balance of $800.39 was due appellee, Carey, under the contract. The evidence shows that appellant disbursed the full amount of the $4,500, but paid $800.39 of the amount directly to Krotz from time to time, upon his production of evidence that he had paid the sums for labor and materials

in the completion of the buildings, but not upon liens filed against the property.

The cross-complaint is based upon the written contract between appellant and appellee Carey, and the real question in the case is whether under the contract, appellant was authorized to pay to Krotz, or other person, any money on account of the loan, except upon liens filed against the property; appellant's contention being that under the contract the completion of the buildings must also be provided for from the fund before Carey became entitled to any part of it, while, on the other hand, Carey contends that appellant was restricted in its disbursements to liens actually filed. We perceive no ambiguity in the languge used. It is: "We agree to pay to James W. Arthur $211.80, and to pay all mechanic and other liens which have been or may be hereafter filed against the property described in said mortgage, not, however, to exceed the sum of $2,288.20; and when said buildings are fully completed, and all material and labor fully paid, then any part of said sum of $2,288.20 which we have not paid upon said liens *filed* upon said property, and the expenses incurred by reason of said loan, we agree to pay to Shadrach H. Carey." A purpose to make very clear the class of debts to be paid by appellant is shown by a repetition of the words "any part of said sum of $2,288.20 which we have not paid upon said liens *filed* upon said property * * * shall be paid to Carey."

The appellee had surrendered his first lien upon the property to enable appellant to make the loan of a larger sum to Krotz. After payment of the $2,000, $1,800 of Carey's claim remained unpaid, and, by conveyance of the lots to Krotz, became unsecured, except by appellant's written agreement. In this agreement it was stipulated, in effect, that no part of the loan left with appellant should go into the hands of Krotz. What reason there was for such a stipulation is not material. It might have been a matter of convenience, or the improvidence of Krotz, or a want of con-

fidence that Krotz would make a proper application of the money. It is sufficient that it was a part of the contract that appellant should pay a certain class of debts, and what remained of the loan it should pay to Carey. This undertaking by appellant was accepted by Carey in lieu of his first lien upon the lots and as his only security for the unpaid $1,800. It is true that final payment to Carey should not be made until the buildings were completed, and the labor and material claims fully paid. But it was not stipulated who should complete the buildings, or where the money or credit for that purpose should come from, and the absence of such a stipulation did not warrant appellant in determining for itself the use of the loan fund for that purpose. Appellant's duty was to abide by its contract as it was written. The trial court gave appellant credit on account of the loan for all sums paid by it in discharging mechanic and other liens filed against the property, and awarded judgment to appellee, Carey, for the remainder, to wit, $800.39. And this was right. This conclusion results in disposing of all the errors assigned except the last.

The first six reasons for a new trial are waived. The seventh, eighth, ninth, and tenth complain of the exclusion of testimony as to the value of the property after the buildings had been completed. How the value of the lots at that time could affect the terms of the written contract we can not perceive. The eleventh, twelfth, and thirteenth relate to the exclusion of testimony as to the disbursement by appellant of the loan fund to Krotz, or creditors of Krotz, other than those holding liens filed against the property. This was clearly right. The fourteenth, fifteenth, and sixteenth relate to the exclusion of testimony of the same class, and which was rightfully refused. The other reasons for a new trial are waived for failure to present them. We find no error in the record. Judgment affirmed.